# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. M. CAYRUTH, Minor.

UNPUBLISHED
March 16, 2017

Nos. 333573; 333574
Wayne Circuit Court
Family Division
LC No. 13-511850-NA

Before: MARKEY, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

Respondent-father Stroud and respondent-mother Cayruth each appeal as of right the circuit court's order terminating their parental rights to the minor child. The court terminated Stroud's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), and terminated Cayruth's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), (i), and (j). We affirm.

## I. DOCKET NO. 333573

Respondent Stroud challenges the trial court's decision regarding the statutory grounds for termination and its determination regarding the child's best interests. We note that respondent Stroud has failed to offer a cogent legal argument addressing the trial court's factual findings or its legal determinations based on those findings. He contends only that because he had been participating in reunification services, the trial court should have given him additional time in which to complete those services, even though the child had been in foster care for more than a year. Although the issue could be deemed abandoned for failure to present a meaningful argument, *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008), we will address it in the interest of justice. The trial court's determinations regarding a statutory ground for termination and the child's best interests are both reviewed for clear error. *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014); MCR 3.977(K).

The trial court did not clearly err in finding that § 19b(3)(c)(*i*) had been established by clear and convincing evidence. This provision states that the trial court may terminate a respondent's parental rights if:

> (c) The parent was a respondent in a proceeding brought under this
> chapter, 182 or more days have elapsed since the issuance of an initial

-1-

dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*i*).]

Stroud was a respondent in this case. The conditions that led to the adjudication were his lack of suitable housing for himself and the child, and his lack of a legal source of income with which to support himself and the child. More than 182 days after the initial dispositional order, the trial court found that Stroud had not acquired suitable housing. The evidence showed that he and Cayruth were illegally "squatting" in a house owned by the city of Detroit. While Stroud testified that the home was owned by an individual named "Brown," he admitted that he did not have a lease agreement for the property. Further, the foster-care worker testified that the house was in deplorable condition. The trial court also found that Stroud did not have a legal source of income. Stroud claimed to be disabled, but he did not receive disability benefits. He worked occasionally doing odd jobs for cash, but he never provided any form of documentation showing when he worked, who he worked for, or how much he earned. Given that Stroud had a year in which to obtain suitable housing and a legal and sufficient source of income and had not made any progress, the trial court did not clearly err in finding that the conditions that led to the adjudication had not been rectified and were not reasonably likely to be rectified within a reasonable time considering the age of the child (15 months).

The trial court also did not clearly err in finding that § 19b(3)(g) had been established by clear and convincing evidence. This provision states that the trial court may terminate a respondent's parental rights if the court finds clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g).

The record confirms that Stroud failed to provide proper care and custody for the child. He was incarcerated and left the child with Cayruth, who was an unfit caretaker; she had another child in foster care for which a termination hearing was pending and she did not have suitable housing for herself and the child. The evidence showed that Stroud was provided with services to enable him to be able to provide proper care and custody. After a year, he had not completed parenting classes and his behavior at family visits showed that he could not properly take care of the child, and he was resistant to change. He had not completed counseling and became angry when redirected at family visits. He had not obtained suitable housing or a legal source of income, and had not demonstrated his sobriety by providing random drug screens as ordered. Given Stroud's shortcomings and lack of progress after a year, the trial court did not clearly err in finding that he did not provide proper care and custody for the child and was not likely to be able to do so within a reasonable time.

The trial court also did not clearly err in finding that § 19b(3)(j) had been established by clear and convincing evidence. This provision states that the trial court may terminate a respondent's parental rights if the court finds clear and convincing evidence that "[t]here is a

reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

Stroud was an angry, abusive person. From the outset of this case, the trial court was rightfully concerned about respondent's domestic violence towards Cayruth. The Department of Health and Human Services (DHHS) twice referred Stroud to domestic violence counseling, but he never completed the program. Stroud was involved in two domestic violence incidents with Cayruth during the pendency of this case, one of which sent Cayruth to the hospital with a fractured nose.

Indeed, Stroud's demeaning behavior towards women did not end with Cayruth. Stroud responded angrily when workers attempted to direct him during his supervised parenting time. During one parenting time session, Stroud told a worker that every woman needs to be roughed up.

Stroud's strong tendency towards domestic violence is enough for this Court to conclude that the trial court did not clearly err in finding that the child was reasonably likely to be harmed if placed in Stroud's home. Stroud's failure to address his parenting deficiencies, obtain a steady income, obtain suitable housing, and submit to drug screening only strengthens the trial court's finding.

Further, in light of the overwhelming evidence supporting the statutory grounds for terminating Stroud's parental rights, we conclude that the trial court did not clearly err in finding that termination of those rights was in the child's best interests.

## II. DOCKET NO. 333574

In her appeal, respondent Cayruth does not challenge the statutory grounds under which the trial court terminated her parental rights. Rather, Cayruth argues that DHHS failed to make reasonable efforts to reunite her with the child. Because Cayruth did not raise this issue in a timely manner in the trial court, and did not object to the service plan or argue that the services provided were inadequate, this issue is unpreserved. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Therefore, "review is limited to determining whether a plain error occurred that affected substantial rights." *In re Egbert R Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007).

"In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). Specifically, "[r]easonable efforts to reunify the child and family must be made in all cases" except those cases involving exceptional circumstances. MCL 712A.19a(2). While exceptional circumstances arguably existed here because Cayruth's parental rights to another child were terminated before the initial dispositional hearing for the instant child, MCL 712A.19a(2)(c), DHHS agreed to provide services.

DHHS made "reasonable efforts" toward reunification by providing referrals for services and attempting to engage Cayruth in those services. The record shows that DHHS provided Cayruth with psychological and psychiatric evaluations to assess her needs, parenting classes, in-

home counseling, and family visits. Cayruth does not claim that these services were inadequate, does not identify any particular additional services that should have been provided, and has not shown that she "would have fared better" had she been offered additional services. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). Therefore, Cayruth has not shown that her substantial rights were affected by the alleged failure to provide services.

Cayruth also argues that the trial court erred in finding that termination of her parental rights was in the child's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination is in the child's best interests must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In deciding whether termination is in the child's best interests, the trial "court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts,* 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted).

There was evidence that respondent loved the child and they were bonded, and the trial court found that Cayruth had substantially complied with her parent-agency agreement. The trial court also found, however, that Cayruth failed to benefit from parenting classes because she still needed assistance with basic childcare matters. Both parents had been referred to counseling to address domestic violence. Neither parent completed counseling, and Stroud committed two more episodes of domestic violence against Cayruth during the pendency of the case— nevertheless, Cayruth continued living with Stroud. Further, they did not have a legal right to occupy the home in which they were living. Given such evidence, and the fact that the child had been in foster care for more than a year, we conclude that the trial court did not clearly err in finding that termination of Cayruth's parental rights was in the child's best interests.

Affirmed.


/s/ Jane E. Markey
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle